UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIC DAVID ZEMEKA, *et al.*,<br><br>　　Plaintiffs,<br><br>　　　v.<br><br>ERIC H. HOLDER, JR., Attorney General<br>of the United States, *et al*.,<br><br>　　Defendants. | Civil Action No. 12-1619 (JEB) |

## MEMORANDUM OPINION

Plaintiffs Eric and Annie Zemeka were married in March 2010 in Maryland. Annie, an American citizen, then filed an I-130 petition with the U.S. Citizenship and Immigration Service to obtain "immediate relative" status for Eric, a native of Cameroon. USCIS denied the petition on the ground that Eric's prior wife had previously filed an I-130 petition for him based on a sham marriage. Under 8 U.S.C. § 1154(c), a prior fraudulent petition results in a lifetime bar to any subsequent I-130 petition. The Zemekas do not challenge the statute, but argue that Eric was blameless in the earlier incident. As a result, they ask this Court to find USCIS's determination arbitrary and capricious. Defendants have now moved for summary judgment, contending that their decision was supported by the agency record. As they are correct, judgment on their behalf is warranted.

**I.　Background**

　A.　Factual Background

In its Opinion and Order of August 28, 2013, denying without prejudice Defendants' prior Motion to Dismiss, the Court specifically required the parties to rely only on those facts

1

contained in the Administrative Record, unless they could show that a recognized exception applied to this rule of administrative review. See ECF No. 14. Although Plaintiffs nowhere contend that the Court may appropriately consider material outside of the Administrative Record, they nonetheless cite to a new Affidavit of Eric Zemeka. See Opp. at 3-7. The Court may not consider this piece of evidence. See, e.g., Theodore Roosevelt Conservation P'ship v. Salazar, 616 F.3d 497, 514 (D.C. Cir. 2010) ("The APA limits judicial review to the administrative record except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.") (internal quotation marks omitted).

As described in the Administrative Record, then, Eric Zemeka is a native and citizen of Cameroon. He was first admitted to the United States on November 14, 2005, on an F-1 nonimmigrant student visa to attend Montgomery College in Rockville, Maryland. See AR 47. On May 26, 2006, in Fulton County, Georgia, he married his first wife, Sabrina Stephens. Id. at 220, 232-33, 419. Stephens then filed an I-130 petition with USCIS on his behalf on July 2 of that year. Id. at 106, 217. She claimed no prior marriages on the I-130 or on the biographical information form G-325A. Id. at 217, 414-15. Zemeka, meanwhile, filed an I-485 Application to Register Permanent Residence or Adjust Status on June 13, which was contingent upon the outcome of his I-130 petition. See id. at 37-40. Allegedly unbeknownst to him, on May 3, three weeks before marrying Zemeka, Stephens had married another Cameroonian man, Aymard Audrey Fonkou Fotsing, in Cobb County, Georgia, and she filed an I-130 petition with USCIS on Fotsing's behalf on September 11 (two months after filing the I-130 petition on behalf of Zemeka). Id. at 106, 217, 292. On September 18, Stephens's sister called the DHS-2ICE Tip Line, reporting that Stephens "was paid $700 as the first installment to marry a man from somewhere in Africa in order for him to obtain papers." Id. at 618. The sister claimed that the

marriage had been arranged by a third party and that the two "had never met until they showed up to marry each other and that they have never lived together." Id.

Both Zemeka and Fotsing were scheduled to appear with Stephens before a USCIS Officer for separate I-130 interviews in Atlanta on May 30, 2007. Id. at 106, 217. Following a disagreement between Zemeka and Stephens, she refused to attend, and he proceeded alone. Id. Neither Stephens nor Fotsing appeared for Fotsing's interview. Id. Zemeka was ultimately issued a Notice of Intent to Deny (NOID) the I-130 petition by USCIS on January 29, 2008, partialy because Stephens was already married to Fotsing. See id. at 217-18, 232-33, 412-13. Zemeka alleges that this was the first time he learned of his wife's bigamy. See id. at 220.

In response to the NOID, Stephens resubmitted her marriage certificate and included a sworn affidavit to USCIS claiming that she had never been married to Fotsing. Id. at 107, 218, 406-10. Yet, after visiting the Cobb County records office, Zemeka claims he discovered proof that Stephens had indeed married Fotsing the same month she had married him. Id. at 65. Not surprisingly, given the invalidity of their marriage, Zemeka's relationship with Stephens allegedly deteriorated and he moved out. See id. at 65.

Meanwhile, on February 5, 2009, USCIS denied Stephens's I-130 petition for abandonment (failure to appear for an interview) and lack of documentary evidence rebutting USCIS's finding of fraud. See id. at 218, 236-37. Zemeka's I-485 application was denied the same day for ineligibility to receive an immigrant visa. See id. at 36. After this denial, Zemeka sought – and received – a marriage annulment, which was granted by the Superior Court of Fulton County, Georgia, on May 6, 2009. Id. at 107. Zemeka was issued his first notice to appear for a removal hearing on September 24, 2009, to be held on April 26, 2010. See id. at 31-32, 34-35.

3

Zemeka then married his current wife, a United States citizen whose maiden name was Annie Valerie Sielinou, in Rockville, Maryland, on March 29, 2010. Id. at 250, 355. Annie filed an I-130 petition on his behalf on April 25, a day before his removal hearing. Id. at 240. While acknowledging that Zemeka's current marriage "appears . . . bona fide," id. at 67, USCIS issued a NOID on September 13, 2011, citing INA § 204(c), 8 U.S.C. § 1154, which prohibits approval of any I-130 petition filed on behalf of an alien beneficiary who has previously been accorded, or has sought to be accorded, immediate-relative status on the basis of a fraudulent marriage. See AR 105-08, 216-19. In other words, Zemeka's previous entanglement with Stephens stood as an insurmountable obstacle to Annie's I-130 petition.

B. USCIS Decision of October 26, 2011

Following the September 13, 2011, NOID, the Zemekas were afforded the opportunity to produce evidence to rebut USCIS's finding of prior marriage fraud. See AR 108 (citing Matter of To, 14 I. & N. Dec. 679 (BIA 1974)). Plaintiffs submitted a GEICO insurance policy, see id. at 224-26, a letter from AT&T (declining to provide service without toll blocking), see id. at 227-29, and an affidavit signed by Eric Zemeka. See id. at 220-22. USCIS nevertheless denied the I-130 petition on October 26, 2011, finding,

> [T]here is substantial and probative evidence to show that his prior marriage to Sabrina Ann Stephens was an attempt to evade the immigration laws of the United States by entering into a fraudulent marriage. As we find that the beneficiary previously engaged in a sham marriage, pursuant to Section 204(c) of the Act he is precluded from the approval of other visa petition[s].

Id. at 64. The District Director reached this finding based chiefly upon evidence of fraud perpetrated by Stephens – namely, that she had married two Cameroonian men in Georgia in May 2006; she had filed I-130 petitions for each of them; she had failed to appear for USCIS interviews for either petition; she had made material misrepresentations on her I-130 and G-

4

325A forms submitted on Zemeka's behalf by concealing her prior marriage to Fotsing; she had failed to submit documentary evidence of a good-faith marriage with Zemeka; and her assertion in a sworn affidavit that she had never married Fotsing was proved false. See id. at 64.

USCIS also noted that it had "relied upon an independent analysis of Mr. Ze Meka's entire record" in "finding that Mr. Ze Meka's prior marriage to Ms. Stephens was entered into in order to evade U.S. immigration laws," and that although Stephens's undisclosed prior marriage to Fotsing "is indeed indicative of fraud, it was not the sole basis for our finding." Id. at 66.[1] In particular, USCIS pointed to scant documentary evidence of her marriage to Zemeka produced in response to the September 13 NOID: only a GEICO insurance policy, a letter from AT&T, and an affidavit signed by Zemeka. See id. at 64-67. This evidence was found to "fall far short of convincing evidence of a bona fide material union." Id. at 66. USCIS also contrasted the slim evidence submitted to prove Zemeka's first marriage was *bona fide* with the ample support to demonstrate the legitimacy of his current marriage, including tax returns and evidence of commingled assets. Id. at 67.

In its October 26 decision, USCIS determined:

> Whether Mr. Ze Meka was aware of the entirety of the immigration fraud perpetuated by Ms. Stephens exceeds the scope of this adjudication of your petition. Here, we are concerned with analyzing his prior marriage to Ms. Stephens. . . . [T]hat he was not aware of Ms. Stephens['s] prior marriage does not dissolve the substantial and probative indicia of fraud we have found in his marriage to Ms. Stephens.

Id. at 66. The Director concluded that Zemeka's attorney's claim that he was unaware of Stephens's prior marriage did not completely "dissolve the substantial and probative indicia of fraud [because] the record lacks evidence of his cohabitation with Ms. Stephens or the

---

[1] Zemeka's name is spelled both "Zemeka" and "Ze Meka" in various places. Since Plaintiffs refer to him as Zemeka in their Complaint, the Court will follow suit.

5

consummation of their marriage." Id. at 66. As such, USCIS concluded that, although his current marriage appears *bona fide*, Zemeka had failed to meet his "burden . . . [of] establish[ing] that the beneficiary's previous marriage to Sabrina Ann Stephens was not entered into for the sole purpose of circumventing U.S. immigration laws." Id. at 67.

### C. BIA Affirmance of August 13, 2012

Zemeka was notified on July 31, 2012, that his appeal of the denial of his I-130 petition for "immediate relative" status would be denied. See id. at 124-25. That denial occurred on August 13. See id. at 100-01. The Board of Immigration Appeals agreed with the District Director that Stephens's conduct "raises the question that marriage fraud has occurred." See id. at 124-25. The BIA added that "the record lacks evidence of commingling of funds, or any affidavits (aside from the beneficiary's) attesting to the circumstances surrounding the meeting and courtship between Ms. Stephens and the beneficiary." Id. at 125. The BIA concluded that Zemeka's claim to have had no knowledge of the fraudulent scheme "lacks credibility, as [Stephens] would appear to have no motive to defraud the United States on his behalf without his knowledge." Id.

Still dissatisfied with the appellate ruling, Plaintiffs brought this case. Defendants initially moved to dismiss, see ECF No. 10, but the Court held that since neither party had based its pleadings on the administrative record, dismissal was inappropriate, and Defendants could renew their arguments in a Motion for Summary Judgment. See ECF No. 14. They have now done so.

## II. Standard of Review

The Court has jurisdiction to review a final agency decision denying an I-130 petition on the basis of marriage fraud under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* See,

6

e.g., Ginters v. Fraizer, 614 F.3d 822, 828-29 (8th Cir. 2010) (finding U.S. District Court has subject-matter jurisdiction to review USCIS denial of I-130 Petition for Alien Relative). Pursuant to the APA, the Court reviews agency decisions to determine if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). An agency, in reaching its decision, "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (internal quotation marks omitted). Review by this Court under the APA is generally limited to the administrative record that was before the agency when it reached its decision. Voyageurs Nat'l Park Ass'n v. Norton, 381 F.3d 759, 766 (8th Cir. 2004). Although the Court may not "supply a reasoned basis for the agency's action that the agency itself has not given," it must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 (internal quotation marks and citation omitted). Because the BIA's decision affirming USCIS's denial of Zemeka's I-130 petition "adopted the rationale set forth in the USCIS's decision," both are subject to review by the Court. See Rivera v. Patterson, No. 10-23556, 2011 WL 5525356, at * 4 n.4 (S.D. Fla. Nov. 14, 2011).

Summary judgment may generally be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When reviewing a final agency action under the APA, 5 U.S.C. § 706, however, the standard set forth in Rule 56 does not apply because the Court's role is limited to reviewing the administrative record. See Neighborhood Assistance Corp. of Am. v. Consumer Fin. Prot. Bureau, 907 F. Supp. 2d 112, 123 (D.D.C. 2012); Cottage Health Sys. v. Sebelius, 631

F. Supp. 2d 80, 89–90 (D.D.C. 2009). Instead, under the APA, it is the role of the agency to resolve factual issues to arrive at a decision supported by the administrative record, while "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Cottage Health Sys., 631 F. Supp. 2d at 90 (internal quotation marks and citation omitted). The district court "sits as an appellate tribunal. The 'entire case' on review is a question of law." Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083-84 (D.C. Cir. 2001). Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review. See Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003).

**III. Analysis**

The Court will begin with a general discussion of I-130 petitions and 8 U.S.C. § 1154 and then proceed to an analysis of the claims here.

    A. I-130 Petitions & 8 U.S.C. § 1154

A citizen of the United States may assist her spouse to attain "lawful permanent resident" status by filing a Form I-130 Petition for Alien Relative with USCIS. See 8 C.F.R. §§ 204.1(a)(1), 204.2(a). The petition seeks the classification of the alien beneficiary as an "immediate relative," which includes "children, spouses, and parents of a citizen of the United States." 8 U.S.C. § 1151(b)(2)(A)(i). This status exempts the "immediate relative" from annual quotas and other family-based immigration classifications. See 8 U.S.C. § 1151(b)(2). With regard to spouses, the petitioner sponsoring an alien beneficiary carries the "burden of proof . . .[,] and the petitioner must by satisfactory evidence establish the validity of his marriage." Matter of Brantigan, 11 I. & N. Dec. 493, 494 (BIA 1966). The test for a *bona fide* marriage

8

under immigration law is whether, at the inception of the marriage, "the bride and groom intended to establish a life together . . . ." Matter of Laureano, 19 I. & N. Dec. 1, 2-3 (BIA 1983); see also Lutwak v. United States, 344 U.S. 604, 611 (1953) (test is whether "the two parties have undertaken to establish a life together and assume certain duties and obligations"). If the I-130 petition is granted, the alien is classified as an "immediate relative" of a United States citizen and may seek "lawful permanent resident" status by filing a Form I-485 Application to Register Permanent Resident or Adjust Status. See 8 U.S.C. § 1255(a).

The USCIS, however, is precluded from approving any I-130 petition filed on behalf of an alien beneficiary who has previously been accorded, or has sought to be accorded, immediate relative status on the basis of a fraudulent marriage:

> Notwithstanding the provisions of subsection (b) of this section no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c). Indeed, the provision "requires USCIS to deny an I-130 visa petition filed by a United States citizen on behalf of an alien if the USCIS determines that the alien has previously entered into a fraudulent marriage in order to evade immigration laws." Velez-Duenas v. Swacina, 875 F. Supp. 2d 1372, 1377-78 (S.D. Fla. 2012) (citing 8 U.S.C. § 1154(c)); Eberheart v. U.S. Atty. Gen., 322 Fed. Appx. 827, 830 (11th Cir. 2009). A marriage entered into for the purpose of evading immigration laws thus precludes a beneficiary from ever receiving "immediate relative" status from a subsequent I-130 petition. See Matter of Isber, 20 I. & N. Dec. 676, 678 (BIA 1993); Matter of Kahy, 19 I. & N. Dec. 803, 804 (BIA 1988).

A USCIS District Director determines, on behalf of the Attorney General, whether § 1154(c) applies to a beneficiary in the course of adjudicating a subsequent visa petition. See, e.g., Matter of Tawfik, 20 I. & N. Dec. 166, 168 (BIA 1990); Matter of Agdianoay, 16 I. & N. Dec. 545, 546 (BIA 1978); Matter of Samsen, 15 I. & N. Dec. 28, 29 (BIA 1974). Where prior fraud is the basis for denying a subsequent I-130 petition, "the district director should not give conclusive effect to determinations made in a prior proceeding, but, rather, should reach his own independent conclusion based on the evidence before him." Matter of Tawfik, 20 I. & N. Dec. at 168; see also Matter of Samsen, 15 I. & N. Dec. at 29; Matter of F-, 9 I. & N. Dec. 684, 686-87 (BIA 1972). A determination of marriage fraud made pursuant to this provision must be supported by "substantial and probative" evidence. See 8 C.F.R. § 204.2(a)(1)(ii); Matter of Tawfik, 20 I. & N. Dec. at 167; Matter of Agdianoay, 16 I. & N. Dec. at 546. Substantial evidence is "more than a scintilla, but . . . something less than a preponderance of the evidence." Fla. Gas Transmission Co. v. FERC, 604 F.3d 636, 645 (D.C. Cir. 2010) (citation omitted).

Where USCIS discovers evidence related to marriage fraud, the agency must issue a notice of intent to deny (NOID) to the petitioner:

> A request for evidence or notice of intent to deny will be communicated by regular or electronic mail and will specify the type of evidence required, and whether initial evidence or additional evidence is required, or the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond.

8 C.F.R. § 103.2(b)(8)(iv). The NOID informs the petitioner of "the derogatory information" in question and affords him the "opportunity to rebut the information and present information in his/her own behalf before the decision is rendered . . . ." Id. § 103.2(b)(16)(i); see Matter of To, 14 I. & N. Dec. at 679; Laureano, 19 I. & N. Dec. at 3 ("where there is reason to doubt the validity of the marital relationship, the petitioner must present evidence to show that the

marriage was not entered into for the purpose of evading the immigration laws"). Upon receiving the NOID, the burden shifts to the petitioner to rebut USCIS's finding of fraud and establish that a prior marriage was not "entered into for the purpose of evading immigration laws." See Matter of Kahy, 19 I. & N. Dec. at 805 n.2 ("Even if his current marriage is unquestionably bona fide, however, the visa petition cannot be approved if the beneficiary sought to be accorded nonquota status based on a prior fraudulent marriage.").

After receiving a response to the NOID, the District Director determines whether the I-130 petition should be approved. 6 U.S.C. § 271(b); 8 C.F.R. § 204.2(a)(1)(ii). The Director's decision may be appealed to the Board of Immigration Appeals, 8 C.F.R. § 1204.1. If a petitioner remains dissatisfied with the BIA's decision, he may then file suit in this Court, although USCIS's denial of an I-130 petition based on a finding of fraudulent marriage "will stand if the record reveals a rational basis" for the agency's decision. See Asamoah v. Napolitano, No. 10-470, 2010 WL 5095353, at *4 (D. Md. Dec. 8, 2010).

B. The Merits

Defendants move for summary judgment, claiming that the USCIS decision was sound because the agency had "overwhelming evidence that Sabrina was engaged in . . . a fraudulent marriage to Zemeka." See Mot. at 10. Zemeka responds that judgment should be denied because there is a genuine issue of material fact – namely, that "USCIS's findings are based on speculation." See Opp. at 2. As the Court set out in Section II, *supra*, the material-fact standard in Rule 56 does not apply because the Court's role is limited to reviewing the administrative record to determine if the agency's decision was supported by substantial evidence. Bearing this in mind, the Court will first address Plaintiffs' challenge to USCIS's initial decision and then turn to the agency's consideration of Plaintiffs' rebuttal evidence.

11

### 1. Application of 8 USC § 1154(c)

Plaintiffs first argue that USCIS erred here when it relied on 8 U.S.C. § 1154(c) because the fraud was perpetrated not by Zemeka, but by Stephens, and he was actually a victim of that fraud. See Opp. at 11-15. They contend that, as a result, Defendants never should have issued the NOID that shifted the burden to Zemeka to prove the *bona fides* of his previous marriage. Id. In other words, the Zemekas maintain that § 1154(c)(1) requires that USCIS determine that the alien entered the previous marriage fraudulently, rather than that either party did so. Id. Under such a construction, they claim, USCIS could not have found sufficient knowledge by Zemeka to have triggered the issuance of the NOID.

The Court need not decide whether the statute focuses on the intent of either party to a marriage, or only the alien's intent, because even if the latter is the case, the result here would be the same: it was reasonable for the agency to issue the NOID. This is because Defendants' decision is supported by substantial evidence in the record that Zemeka entered into a fraudulent marriage with Stephens for the purpose of evading the immigration laws. To reiterate, substantial evidence is "more than a scintilla, but . . . something less than a preponderance of the evidence." Fla. Gas Transmission Co., 604 F.3d at 645.

The agency's evidence demonstrating Zemeka's fraudulent intent was: his marrying a woman who had wed another Cameroonian man in the same month, AR at 106, Stephens's submission of visa petitions for both of them, id., her unusual behavior and failure to appear for either I-130 hearing, id., and the failure of Zemeka and Stephens to submit any documentary evidence of a joint life in response to the 2008 NOID (regarding Zemeka's first I-130 petition). See id. at 66. Indeed, Zemeka's failure to offer any corroborating information after the 2008 NOID is quite damning on its own. As the BIA concluded after reviewing all of this evidence,

12

moreover, Zemeka's claim to have had no knowledge of the fraudulent scheme "lacks credibility, as [Stephens] would appear to have no motive to defraud the United States on his behalf without his knowledge." Id. at 125. In light of the agency's evidence, this was not an irrational conclusion and is supported by substantial evidence. The decision to issue the NOID – and thus to place the burden upon Zemeka to establish the *bona fides* of his prior marriage – was therefore reasonable.

### 2. *Zemekas' Rebuttal Evidence*

By contending that they proffered evidence sufficient to rebut the finding of marriage fraud, Plaintiffs imply that, even if USCIS's preliminary determination was correct, the agency either failed to consider Plaintiffs' rebuttal evidence or reached a conclusion unsupported by that evidence. Neither argument holds water.

In response to the September 13, 2011, NOID, Plaintiffs submitted three pieces of evidence to prove that Zemeka's marriage to Stephens was *bona fide*: a GEICO insurance policy, see id. at 224-26, a letter from AT&T (declining to provide service without toll blocking), see id. at 227-29, and an affidavit signed by Zemeka. See id. at 220-22. USCIS properly conducted a *de novo* review of this evidence; in fact, it expressly noted that it had "review[ed] . . . the evidence contained in the record and [Plaintiffs'] response to [the] NOID." See AR 68; see Tawfik, 20 I. & N. Dec. at 168. This evidence was found to "fall far short of convincing evidence of a bona fide material union" by USCIS. See AR 66. Upon its own *de novo* review, see 8 C.F.R. § 1003.1(d)(3)(iii), the BIA listed the evidence submitted by Plaintiffs in response to the NOID and similarly concluded that the denial "is adequately supported in this record . . . ." AR 125. The record therefore contains evidence that both USCIS and the BIA considered Plaintiffs' materials in their decisions to deny the I-130 petition.

Given that all evidence before the agency was considered, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Cottage Health Sys., 631 F. Supp. 2d at 90 (internal citation omitted). A USCIS denial of an I-130 petition based on a finding of fraudulent marriage "will stand if the record reveals a rational basis" for the agency's decision. See Asamoah No. 10-470, 2010 WL 5095353, at *4.

USCIS determined that the two pieces of documentary evidence submitted by Plaintiffs in response to the 2011 NOID were insufficient, in both quantity and quality, to demonstrate Zemeka's "cohabitation with Ms. Stephens or the consummation of their marriage." See AR 66. Indeed, this rebuttal evidence does not prove Zemeka's first marital relationship was *bona fide* at its inception: the GEICO document memorialized a six-month insurance policy that failed to indicate that Zemeka and Stephens actually co-owned a vehicle, id. at 65; the AT&T document was a denial of service for both of them dated more than a year after their wedding, and there was no evidence of subsequent attempts to regain phone service in both of their names, id.; and no evidence was submitted to document a purported joint bank account. Id. Zemeka's affidavit standing essentially alone is insufficient to bridge this evidentiary gap. Id.

This weak evidence is easily outweighed by the agency's evidence of fraud: Stephens's twin marriages to two Cameroonian men in the same month in Georgia, id. at 106, her duplicate submission of visa petitions, id., her failure to appear for either I-130 hearing, id., the failure of Stephens and Zemeka to respond to the 2008 NOID (regarding Zemeka's first I-130 petition), and Zemeka's inability to produce more than two pieces of objective evidence after two years of supposed cohabitation with Stephens. See id. at 66. Equally significant, the meager evidence offered to prove the legitimacy of his marriage to Stephens presents, in an unfortunate irony, a

14

sharp contrast with the ample evidence submitted to demonstrate the legitimacy of his current marriage, which includes tax returns, evidence of commingled assets, a joint insurance policy, and evidence of utilities registered in both names. Id. at 67.

Taken together, this evidence makes manifest that USCIS's decision, affirmed by the BIA, was supported by substantial and probative evidence and was rational, thereby defeating Plaintiffs' contention that the denial of the I-130 petition was arbitrary, capricious, or an abuse of discretion. See 5 U.S.C. § 706(2)(A).

## IV. Conclusion

Although Plaintiffs' current marriage may well be *bona fide*, USCIS's decision to deny their I-130 petition was based on substantial evidence in the record. The Court will, accordingly, affirm the decision of the BIA and grant Defendants' Motion for Summary Judgment. A contemporaneous Order so indicating will issue.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: November 20, 2013